**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

```
_____
                              :
NEIL ROSENSTEIN,              :        Civil No. 10-3710 (RMB)
                              :
            Petitioner,       :
                              :
       v.                     :              OPINION
                              :
DONNA ZICKEFOOSE,             :
                              :
            Respondents.      :
_____:
```

**APPEARANCES:**

        NEIL ROSENSTEIN, #28918-050
        F.C.I. Fort Dix
        P.O. Box 2000
        Fort Dix, New Jersey  08640
        Petitioner Pro Se

        IRENE E. DOWDY, Assistant U.S. Attorney
        PAUL J. FISHMAN, U.S. ATTORNEY
        P.O. Box 2098
        Camden, New Jersey 08101
        Attorneys for Respondents

**BUMB**, District Judge

        Neil Rosenstein, an inmate incarcerated at FCI Fort Dix in
New Jersey, filed a Petition for a Writ of Habeas Corpus under 28
U.S.C. § 2241 seeking restoration of good conduct time forfeited
as a disciplinary sanction for possession of a narcotic or drug.
Respondents filed an Answer, together with the declaration of
Tara Moran and relevant documents.  Petitioner filed a Reply.
For the reasons expressed below, the Court will dismiss the
Petition with prejudice.

## I.  BACKGROUND

Petitioner challenges the loss of 40 days of earned good conduct time imposed by the Bureau of Prisons ("BOP") as a disciplinary sanction while Petitioner was confined at FCI Fort Dix.[1]  Petitioner argues that the BOP violated Due Process and should be estopped from enforcing the sanction.  Respondents filed an Answer, arguing that the BOP did not abuse its discretion or violate federal law.

The material facts are undisputed.  On October 30, 2008, Judge William H. Walls sentenced Petitioner to a 51-month term of incarceration based on his plea of guilty to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).[2]  See United States v. Rosenstein, Crim. No. 08-0325 (WHW) judgment (D.N.J. Nov. 6, 2008).  On January 5, 2009, Petitioner self-surrendered at FCI Fort Dix.  At the time of intake, Petitioner turned over to BOP official Syjongtian four prescribed

---

[1] To the extent that Petitioner challenges the loss of commissary or other privileges, such claim is not cognizable under 28 U.S.C. § 2241 because it does not affect the fact or duration of Petitioner's confinement.  See Ganim v. Fed. Bureau of Prisons, 235 Fed. App'x 882 (3d Cir. 2007); Bronson v. Demming, 56 Fed. App'x 551 (3d Cir. 2002); Woodall v. Fed. Bureau of Prisons, 432 F. 3d 235, 242 n.5 (3d Cir. 2005).  Moreover, while the Due Process Clause protects against the revocation of good conduct time, it does not protect against loss of privileges.  See Sandin v. Conner, 515 U.S. 472 (1995); Torres v. Fauver, 292 F. 3d 141, 150-51 (3d Cir. 2002).

[2] Petitioner's projected release date is October 20, 2012. (Docket Entry #9-2, p. 6.)

3

medications that Petitioner had obtained a few days before from
an outside pharmacy, i.e., prozac (20 mg., one capsule 2 X/day),
lipitor (20 mg., one tablet daily), alprazolam (0.5 mg., one
tablet at bedtime as needed), and zolpidem tartrate (10 mg., one
tablet at bedtime as needed).  (Docket Entry #9-2, p. 59.)  The
next day, January 6, 2009, Syjongtian informed Petitioner that
Dr. Chung had verbally authorized Petitioner to continue to
receive these medications at pill line until Dr. Chung had
completed an evaluation.  The following administrative note was
entered in Petitioner's medical record by Mr. Syjongtian and
cosigned by Dr. Chung on January 6, 2009:

> As per EMT patient presented to HSU for his
> pill line medication.  Patient is a self-
> surrender and brought medications from the
> "streets."  Unit MD consulted and verbally
> ordered to give medications on the pill line
> until he will be fully evaluated in the
> clinic by him.  Pharmacy notified about this
> verbal order by Unit MD.

(Docket Entry 9-2, p. 34.)

From January 7, 2009, through January 12, 2009, at
approximately 5:00 p.m. each day, an unspecified prison official
gave Petitioner that day's dosage of each of these previously
prescribed medications.  Thus, on each of these six days, a
prison official gave Petitioner one alprazolam tablet.  According
to Petitioner, the alprazolam tablets "were not required to be
consumed at the pill line in the presence of the pharmacist and
were prescribed to be 'taken at bedtime as needed.'"  (Docket

4

Entry #1, p. 1.)  Because Petitioner did not need the alprazolam
on three out of the seven days he received a tablet, Petitioner
took each of the three unconsumed alprazolam tablets back to his
cell and stored them in an empty pill container which he kept in
his secure locker.  On January 12, 2009, Dr. Chung evaluated
Petitioner and informed him that alprazolam and zolpidem were not
part of the BOP's National Drug Formulary, and "Dr. Chung
withdrew the order for the Petitioner to continue receiving the
sleep aids (alprazolam and zolpidem tartrate).  However, the
Petitioner had received these sleep aid medications, one tablet
daily from January 7th through January 12, for six days - hence
<u>he was issued six tablets each of the alprazolam and zolpidem
tartrate from the pill line, under the direct verbal order of Dr.
Chung on January 6th</u>."  (Docket Entry #10, p. 8) (emphasis in
original).

        Respondent does not dispute Petitioner's contention that "at
no time was the petitioner ordered or instructed to consume or
ingest the subject alprazolam at the pill line, when the
instructions for the medication state it was to be taken at
bedtime, as needed."  (Docket Entry #10, p. 11.)  Nor does
Respondent dispute Petitioner's contention that no official
verbally informed "Petitioner that he was refrained or not
allowed to retain or store any unused medications within his
secured storage locker."  <u>Id.</u>

In June 2009, during a search of Petitioner's locker,
Correctional Officer Maresca "discovered an orange pill bottle
with the label removed.  Inside the bottle, were three orange
colored pills marked (G3720)."[3]  (Docket Entry #9-2, p. 19.)
Officer Maresca prepared and served Petitioner with an Incident
Report charging him with disciplinary infractions.  Id.

Disciplinary Hearing Officer Boyce conducted the first
disciplinary hearing on July 20, 2009.  On August 5, 2009, Boyce
issued a Discipline Hearing Officer Report finding Petitioner
guilty of violating code 112, possession/use of narcotics not
prescribed for the individual by the medical staff.  (Docket
Entry #9-2, p. 23.)  The following sanctions were imposed:  30
days in disciplinary segregation, suspended pending 180 days
clear conduct; loss of 40 days good conduct time; loss of 30 days
of phone and commissary privileges from July 20, 2009 to August
18, 2009; and loss of visitation for 12 months, suspended pending
180 days of clear conduct.  Id. p. 25.

Petitioner appealed to the Warden and then the Northeast
Region, both of which upheld the sanctions.  He appealed to the

---

[3] Petitioner attached to the Petition a printout from
Drugs.com which indicates that the 0.5 mg. alprazolam tablet
manufactured by Greenstone has the imprint "G3720." (Docket
Entry #1-2, p. 13.  Alprazolam, known as Xanax, see Carachuri-
Rosendo v. Holder, 130 S. Ct. 2577, 2583 (2010), is classified
under the Controlled Substances Act, 21 U.S.C. § 801 et seq., as
a Schedule IV controlled substance.  See 21 C.F.R. §
1308.14(c)(1).

Central Office, and on June 2, 2010, Harrell Watts, National

Inmate Appeals Administrator, denied the appeal as follows:

> You appeal the July 20, 2009, decision of the
> Discipline Hearing Officer (DHO) in which you
> were found to have committed the prohibited
> act Use [or Possession] of Any Drugs Not
> Prescribed for the Individual by the Medical
> Staff (code 112).
>
> We reviewed the disciplinary proceeding . . .
> We concluded the DHO considered all relevant
> evidence, relying upon its greater weight . .
> . to support the decision.  You admitted
> stashing medication issued to you at pill
> line.  Such medication is intended for
> immediate use, otherwise it would not be
> doled out dose by dose.  Based on the
> evidence presented, the determination was a
> reasonable conclusion and you have not
> offered any credible evidence to the
> contrary.
>
> With respect to the requirements of Program
> Statement (PS) 5270.07, Inmate Discipline and
> Special Housing Units, we conclude staff
> substantially complied with the requirements
> for considering evidence and administering
> and preserving your due process rights.  In
> particular, records show the witness you
> requested [Dr. Chung] provided a written
> statement for consideration at the hearing.
> He was not required to appear because the
> statement provided the information being
> sought.  As for your staff representative,
> the record also shows you were provided a
> staff representative, who appeared on your
> behalf and affirmed your due process rights
> were administered.  There again, you have not
> presented any evidence which suggests the
> contrary.  We conclude the sanctions imposed
> were appropriate for the infraction and
> consistent with the parameters identified in
> Chapter 4 of the PS.

(Docket Entry 9-2, p. 15.)

7

Petitioner filed the § 2241 Petition on July 23, 2010.
Petitioner raises the following grounds:

> 1.  The determination that Petitioner
> committed a disciplinary infraction "is
> contrary to the record evidence." (Docket
> Entry #1, p. 20.)  Petitioner asserts that
> "he had received from the pill line the three
> tablets of alprazolam, between January 6th
> and January 12th, that were subsequently
> found by the unit officer during the
> shakedown of June 17th.  In order to keep the
> pill line issued alprazolam safe and sanitary
> in his secured locker, the Petitioner had
> obtained an empty pill bottle from a fellow
> inmate, removed that label, and placed the
> three tablets he had remaining in that empty
> pill bottle.  These pills clearly are
> identified as alprazolam from the pill
> marking G 3720 . . . .  Consequently, these
> three identical tablets of alprazolam had not
> been given to the Petitioner by another
> inmate as alleged in the findings of the DHO
> hearing, nor are these medications 'not
> prescribed for the individual by the medical
> staff' as alleged by the DHO . . .  Indeed,
> at the time of the alleged incident, the
> Petitioner no longer had a 'current'
> prescription for alprazolam, as that
> prescription had been suspended by Dr. Chung
> on January 12th.  However, there was no time
> where the Petitioner was advised, ordered,
> informed or otherwise told that the 'sleep
> aid' medications of alprazolam that he had
> received, under order of Dr. Chung, from the
> pill line between January 6th and January
> 12th, were to be discarded or returned to the
> pharmacy . . . .  The Petitioner possessed
> his own medication that had been ordered to
> be given to him from the pill line by Dr.
> Chung's order of January 6th.  The BOP must
> be estopped from first having authorized the
> Petitioner's receipt of the alprazolam from
> the health services pill line, then later
> arguing that the Petitioner is guilty of an
> offense of 'possession or use of drugs not

prescribed for the individual by the medical
staff.'" (Docket Entry #1, pp. 13-14.)

2. "The Petitioner's due process rights were
violated when (a) the evidence from his
medical file containing the verbal order of
Dr. Chung, dated January 6th, authorizing
Petitioner's receipt of the alprazolam from
the pill line, with the notation that this
prescribed medication, brought from the
streets, but surrendered to medical services,
is to be taken 'at bedtime, as needed' [was
not considered by the DHO]; (b) when Dr.
Chung, who had been called upon, by the
Petitioner to serve as a witness at the DHO
hearing, was not present and only submitted a
written statement, which was never disclosed
to the Petitioner; and (c) where Petitioner
requested that staff representative Mr.
Elias, Physicians Assistant, be present at
the DHO hearing, and instead Ms. Brown,
Petitioner's Case Manager (who had no
knowledge of the Petitioner's medical history
or medications history) was present at the
DHO hearing." (Docket Entry #1, p. 14.)

On July 28, 2010, this Court ordered Respondent to file an

answer.  On August 25, 2010, Respondent remanded the disciplinary

charge to the DHO for a new hearing, and notified Petitioner that

he had the right to appeal the determination made after the new

hearing through the Administrative Remedy Program.  (Docket Entry

#9-1, p. 48.)

DHO Boyce conducted the new disciplinary hearing on

September 1, 2010.  On September 7, 2010, DHO Boyce issued a DHO

Report finding Petitioner guilty of code 112.  (Docket Entry #9-

2, p. 50.)  The report states that, although requested by

Petitioner to appear as witnesses, Dr. Chung and Mr. Syjongtian

were not available.  However, the DHO noted that Dr. Chung sent a signed memorandum which was read at the hearing and the staff representative spoke with Dr. Chung by telephone during the hearing.  Id., p. 51.  The DHO further noted that Mr. Syjongtian was on extended leave and in response to the DHO's question, Petitioner stated that Mr. Syjongtian would not testify that Petitioner was prescribed the medication in the month of June 2009.  Id.  The DHO Report indicates that the DHO considered Petitioner's health screening notes from January 2009 as well as Dr. Chung's memorandum.  Id.  DHO Boyce found that Petitioner had committed a disciplinary infraction and imposed the following sanctions:  30 days disciplinary segregation suspended pending 180 days clear conduct; loss of commissary and phone privileges from July 20, 2009 to August 18, 2009; loss of 40 days good conduct time; loss of visitation privileges for 12 months, suspended pending 180 days clear conduct.  Id., pp. 52-53.

Respondent filed an Answer, the declaration of Tara Moran, Legal Assistant, and relevant exhibits.  Respondent argues that this Court should deny the Petition because the final decision of the BOP "is supported by some evidence (the requisite evidentiary standard), and Rosenstein was afforded due process in the prison disciplinary proceeding."  (Docket Entry #9, p. 2.)

## II.  DISCUSSION

### A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not
extend to a prisoner unless . . . [h]e is in custody in violation
of the Constitution or laws or treaties of the United States."
28 U.S.C. § 2241(c)(3).  A federal court has subject matter
jurisdiction under § 2241(c)(3) if two requirements are
satisfied:  (1) the petitioner is "in custody" and (2) the
custody is "in violation of the Constitution or laws or treaties
of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook,
490 U.S. 488, 490 (1989).  The federal habeas statute requires
that the petitioner be in custody "under the conviction or
sentence under attack at the time his petition is filed."  Lee v.
Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490
U.S. at 490-91).  This Court has subject matter jurisdiction
under § 2241 to consider the instant Petition because Petitioner
challenges the loss of good conduct time on federal grounds, and
he was incarcerated in New Jersey at the time he filed the
Petition.  See Woodall, 432 F.3d at 242-44.

### B.  Abuse of Discretion Standard

The Administrative Procedure Act ("APA"), see 5 U.S.C. §
706(2)(a); Lopez v. Davis, 531 U.S. 230, 240 (2001); Edwards v.
United States, 41 F.3d 154, 156 (3d Cir. 1994), requires a
reviewing court to "hold unlawful and set aside agency action,

findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  A reviewing court must find that the actual choice made by the agency was neither arbitrary nor capricious.  See C.K. v. N.J. Dep't of Health & Human Services, 92 F.3d 171, 182 (3d Cir. 1996).  "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins., 463 U.S. 29, 43 (1983) (citation and internal quotation marks omitted); accord Bowman Transp., Inc. v. Arkansas-Best Freight System, 419 U.S. 281, 285 (1974).

To make the finding that agency action was not arbitrary or capricious, a court must review the administrative record that was before the agency at the time of the decision, and "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . .  Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one.  The Court is not empowered to substitute its judgment for that of the agency." Overton Park, 401 U.S. at 416. Reversal of agency action is permitted "[i]f the record before the agency does not support the agency action, if the agency has

12

not considered all relevant factors, or if [the court] simply cannot evaluate the challenged agency action on the basis of the record before [it]." C.K., 92 F.3d at 184 (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).

C.  Due Process

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides:  "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Federal inmates possess a liberty interest in good conduct time.  See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F. 2d 1396, 1399 (3d Cir. 1991); Levi v. Holt, 192 Fed. App'x. 158 (3d Cir. 2006). Where a prison disciplinary hearing results in the loss of good conduct time, due process requires:  (1) 24 hours advance written notice of the disciplinary charges; (2) a hearing with the right to testify, call witnesses and present documentary evidence, when not unduly hazardous to correctional goals; and (3) a written statement by the factfinder as to the evidence relied on and reasons for the disciplinary action.  See Wolff, 418 U.S. at 564-566.  In addition to the requirements of Wolff, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary [officer] are supported by some evidence in the record."  Superintendent, Massachusetts Correctional Institution,

13

<u>Walpole v. Hill</u>, 472 U.S. 445, 454 (1985) (citations and internal quotation marks omitted); <u>see also</u> <u>Griffin v. Spratt</u>, 969 F.2d 16, 19 (3d Cir. 1992); <u>Thompson v. Owens</u>, 889 F.2d 500, 501 (3d Cir. 1989).  The Supreme Court explained the "some evidence" standard in this passage of <u>Hill</u>:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary [officer].

<u>Hill</u>, 472 U.S. at 455-456; <u>see also</u> <u>Thompson</u>, 889 F.2d 500.

D.  BOP Regulations and Policy

BOP regulations authorize the BOP to impose sanctions when an inmate "is found to have committed a prohibited act."  28 C.F.R. § 541.13(a).  Prohibited acts under BOP regulations include use or possession of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff.  28 C.F.R. § 541.13, Table 3.

E.  Analysis

The BOP did not violate Petitioner's due process rights when it sanctioned him with the loss of 40 days of good conduct time in the final decision of the Central Office issued June 2, 2010, <u>see</u> Docket Entry #9-2, p. 15, or the DHO Report dated September 7, 2010, <u>see</u> Docket Entry #9-2, p. 50.  First, Petitioner argues that Respondent denied him the right under <u>Wolff</u> to call Dr.

14

Chung and Mr. Syjongtian as witness.  However, <u>Wolff</u> does not afford inmates the right of cross-examination, and the record shows that the DHO considered (at the hearing and re-hearing) the facts Petitioner wanted to establish by calling Dr. Chung and Mr. Syjongtian as witnesses.  Second, Petitioner argues that the DHO did not consider the January 6, 2009, administrative note showing that Dr. Chung had authorized Petitioner to receive one alprazolam tablet per day at pill line from January 6, 2009, until January 12, 2009, when Dr. Chung discontinued the alprazolam.  (Docket Entry #9-2, p. 34.)  However, the DHO found Petitioner guilty even if Dr. Chung authorized Petitioner to receive one tablet of alprazolam per day at pill line from January 7, 2009, through January 12, 2009.  Thus, the BOP did not deny Petitioner's right (at the hearing or re-hearing) to present material testimonial or documentary evidence, and Petitioner has not shown violation of his due process rights under <u>Wolff</u>.[4]

Nor has Petitioner shown that the disciplinary sanction was arbitrary or capricious, or not supported by "some evidence." Petitioner fully admitted the factual basis for the disciplinary infraction, <u>i.e.</u>, instead of consuming the alprazolam on each of

---

[4] In any event, "errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review." <u>Grossman v. Bruce</u>, 447 F. 3d 801, 805 (10th Cir. 2006).  In this case, any conceivable error in failing to require Dr. Chung's appearance or failing to acknowledge the January 6, 2009, administrative note, were necessarily harmless.

the six days he received same at the pill line in January 2009,

Petitioner stored three of the pills in a bottle in his locker

from the time he received them in January until the search in

June 2009.  Petitioner insists, however, that the BOP should be

estopped because no official verbally informed Petitioner, prior

to the search, that storage of these three prescribed alprazolam

tablets in his locker violated the disciplinary code.  But the

fact that Petitioner did not know (or was not verbally informed

by officials) that storage of a Schedule IV controlled substance

in his locker violated the disciplinary code is irrelevant to

whether he in fact violated the disciplinary code.  Otherwise,

ignorance of the disciplinary code would be an excuse for any

code violation.  Moreover, Program Statement P6360.01, published

January 15, 2005, defines administration as "providing one dose

of medication to be applied or consumed immediately."  Program

Statement P6360.01, p. 16.  The Program Statement defines

dispensing as "placing multiple doses in a properly labeled

container for use over a period of time," and specifies that

"[o]nly pharmacists may dispense medications."  Id., pp. 16–17.

To the extent that notice was legally required, the Program

Statement provided same.  Finally, "[p]arties claiming equitable

estoppel must establish that (1) a representation of fact was

made to them, (2) upon which they had a right to rely, and (3)

the denial of the represented fact by the party making the

16

representation would result in injury to the relying party." In re RFE Industries, Inc., 283 F. 3d 159, 164 (3d Cir. 2002) (quoting Wheeling-Pittsburgh Steel Corp. v. McCune, 836 F. 2d 153, 162-63 (3d Cir. 1987).  Petitioner does not contend that Dr. Chung or any other official told Petitioner that he was allowed to store the alprazolam in his locker, nor does he assert that (prior to the June search) any BOP official knew of (and condoned) Petitioner's storage of the three alprazolam tablets in his locker.  Thus, no BOP official represented to Petitioner that he was allowed to store alprazolam in his locker, and Petitioner has not satisfied the requirements for equitable estoppel.

This Court holds that the disciplinary sanction was not arbitrary or capricious, was supported by some evidence, and that there was no due process violation.  See Allen v. Reese, 52 Fed. App'x 7, 8 (8th Cir. 2002) (holding that federal inmate's storage of prescribed anti-depressant pills administered to him at pill line violates disciplinary code: "Allen admitted that although the pills were given to him at [FCI] Taft to take in the pill line, he kept them instead; and he has not shown that he had any prescription which would have allowed him to accumulate and store a potential overdose of pills").  This Court will dismiss the Petition with prejudice because Respondent did not violate the Constitution, laws or treaties of the United States.

17

### III.   CONCLUSION

For the reasons set forth above, the Court dismisses the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 with prejudice.


s/Renée Marie Bumb
**RENÉE MARIE BUMB**
United States District Judge


Dated: May 3, 2011

18